# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate's Case Number: |
| Plaintiff, | 07 MJ 2794 |
| Vs. | COMPLAINT FOR VIOLATION OF: |
| Jorge Alejandro CORREA- | |
| Rodriguez, | Title 21, United States Code § 952 and 960 – |
| Defendant | Importation of a Controlled Substance |
| | (Felony): |

The undersigned complainant being duly sworn states:

That on or about December 1, 2007, within the Southern District of California, defendant Jorge Alejandro CORREA-Rodriguez did knowingly and intentionally attempt to import and bring into the Customs Territory of the United States from a place outside thereof, approximately 139.23 kilograms/306.31 pounds of marijuana, a Schedule I Controlled Substance; in violation of Title 21, United States Code, § 952 and 960.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

Signature of Complainant
Special Agent, Bryan Bauerle
U.S. Immigration and Customs Enforcement
Office of Investigations

Sworn to before me and subscribed in my presence this 3rd day of December 2007.

Honorable Ruben B. Brooks
UNITED STATES MAGISTRATE JUDGE

AU SA

## PROBABLE CAUSE STATEMENT

I, Special Agent Bryan Bauerle, declare under penalty of perjury, the following is true and correct:

## STATEMENT OF FACTS & SUMMARY OF POST-MIRANDA VIDEO-TAPED INTERVIEW

At approximately 11:55 a.m., on December 1, 2007, Jorge Alejandro CORREA-Rodriguez (CORREA) attempted to enter the United States from the Republic of Mexico at the San Ysidro, California (San Ysidro) Port of Entry (POE).   CORREA was the driver and sole occupant of a white 1995 Ford F-150 Pick-up truck with no license plates.

While assigned to vehicle primary lane # 08 at the San Ysidro POE, Customs and Border Protection Officer (CBPO) Shawn Alves was approached by a white Ford pick-up truck with no license plates. The subject, later identified as CORREA, stated he had been visiting his parents in Mexico. CORREA presented a valid I-551 (ARN# 078528262). CORREA stated that he had nothing to declare and that he had purchased the vehicle three (3) weeks ago. CBPO Alves noticed that the name on the registration of the truck was not CORREA's. CBPO Alves opened the rear camper shell on the truck and immediately detected the smell of soap. CBPO Alves stated that in his experience, the smell of soap is commonly used by individuals smuggling marijuana to cover the scent of the drugs. CBPO Alves also noticed that the back of the truck bed and the camper shell appeared to be shorter on the inside than the outside. CBPO Alves escorted CORREA to the secondary inspection area where CORREA was asked by an additional CBPO if the truck was his. CORREA replied, "No, they told me to drive it."

In the secondary vehicle inspection area of the San Ysidro POE, at approximately 12:00 p.m., CBP Canine Enforcement Officer (CEO) Ainslie Cove, screened the vehicle with her Narcotic/Human Detection Dog, "Aries." Aries alerted to the front of the truck bed. Following the canine alert, CBPO J. Pobre noticed a discrepancy in the space between the camper wall and the vehicle cab. A subsequent X-ray inspection was performed showing anomalies in a non-factory/false compartment. CBPO Pobre removed a false wall inside the camper shell/truck bed and saw packages. CBPO Pobre probed one of the packages, producing a green, leafy vegetable substance that tested positive for tetrahydrocannabinol, the psychoactive ingredient in marijuana, when it was subjected to a chemical field-test.

CBPO Pobre discovered thirty-two (32) cellophane-wrapped packages as well as laundry soap held in the compartment of CORREA's vehicle. CBPO Pobre found and seized approximately 139.23 kilograms/306.31 pounds of marijuana from within CORREA's vehicle.

At approximately 12:21 p.m. on December 1, 2007, U.S. Immigration and Customs Enforcement (ICE) Special Agent (SA) Bryan Bauerle was notified to respond to the San Ysidro POE to investigate the discovery of narcotics within CORREA's vehicle. SA Bauerle was already involved in an additional investigation at the San Ysidro POE and responded at approximately 1:30 p.m. on December 1, 2007.

At approximately 2:00 p.m. SA Bauerle and San Diego Police Department Police Detective (Det.) Juan Sanchez contacted CORREA in his holding cell at the San Ysidro POE

where they inquired about CORREA's well-being and inform him that an illegal substance had been found concealed within his vehicle. Det. Sanchez stated that he and SA Bauerle would return later to interview CORREA. In an unsolicited statement, CORREA stated that he did not know that anything was in the vehicle.

At approximately 3:00 p.m. SA Bauerle and Det. Sanchez escorted CORREA to an interview area where they completed a DEA Form 202, Personal History Report.  Officer Sanchez told CORREA that narcotics had been discovered within his vehicle. CORREA stated that he did not know why he had been detained and that he did not see the CBP officers pull anything from his vehicle. Det. Sanchez advised CORREA of his constitutional rights per Miranda in the Spanish language by reading them to him from a preprinted form written in the Spanish language, as witnessed by SA Bauerle.  CORREA waived his rights and agreed to speak with the officers.

CORREA stated that he does not deal with drugs and that he had no knowledge of what was in his vehicle. CORREA stated that he was a construction worker, specializing in cement, and is currently unemployed. CORREA stated that he performs small side jobs to make money. CORREA told Det. Sanchez that his reason for coming to the U.S. was to shop. CORREA told Det. Sanchez that he intended to purchase socks and underwear at an "Asian store" near Burger King, in San Ysidro, and shoes from the Las Americas Outlet Center. CORREA stated that he does not know the owner of the vehicle.

CORREA attempted to explain to SA Bauerle and Det. Sanchez how he came into possession of the vehicle. CORREA stated that approximately three (3) weeks ago his longtime friend, CARLOS, introduced him to an individual known as "JUNIOR," near CORREA's home in Tijuana. CORREA later stated that he has known CARLOS for 35 years, but he did not know his last name. CORREA gave a nickname for CARLOS as "CHICHO." CORREA stated that he borrowed a different vehicle from "JUNIOR" approximately one week prior to December 1, 2007. CORREA stated that he did not like the vehicle, so he gave it back to "JUNIOR." CORREA stated that he met CARLOS on the morning of December 1, 2007 for breakfast at approximately 8:30 a.m. CORREA told CARLOS that he was going to the cross into the U.S. later in the day to go shopping. CARLOS told CORREA that he had a truck that he could borrow for his trip into the U.S. CORREA asked CARLOS if it was "okay to drive." CORREA clarified to Det. Sanchez and SA Bauerle that he meant "mechanically okay." CORREA stated that the vehicle belonged to "JUNIOR," and that CARLOS was the middleman. CORREA could drive to the vehicle and purchase it at a later time if he liked it. CARLOS took CORREA to the truck after they ate breakfast. The truck was parked a few blocks from CARLOS' residence in Tijuana. CORREA stated that CARLOS told him the registration was in the vehicle and that the Department of Motor Vehicles (DMV) Number had already been taken out. CORREA started the vehicle and drove directly to border.

Det. Sanchez verbally observed that the information CORREA had related to SA Bauerle and Det. Sanchez and the various CBP officers with whom he had had conversations earlier in the afternoon was conflicting and confusing. Det. Sanchez admonished CORREA to tell the truth.

CORREA stated that he had told the CBP officer that the vehicle was not his, while CBPO Alves stated that CORREA claimed the vehicle to be his own. CORREA also stated that he had told the CBP officer that he was going to his house in Chula Vista. CORREA stated that what he meant by that, was that he was attempting to find Andres Paul, his brother-in-law, and/or Jacqueline Rodriguez, his sister-in-law. CORREA stated that Paul and J. Rodriguez are half-siblings. CORREA stated that J. Rodriguez lives in an apartment building near the intersection of Broadway and Anita Street. CORREA stated that he wanted to contact either one of these two individuals in order to help him find his children. CORREA said that he has not spoken with his children in the last four (4) months. CORREA then stated that he also has another sister-in-law, Liliana Rodriguez, who lives in Tijuana. L. Rodriguez told CORREA that he could go to her home and call his children from her house. CORREA stated that he did not know where his children are or their telephone number. CORREA stated that he does not want to pressure them. Det. Sanchez asked CORREA why he needed to find one of his in-laws in the U.S. in order to contact his children when he has a sister-in-law residing in Tijuana offering him the usage of her home and phone. CORREA then stated that L. Rodriguez lived in Tecate, not Tijuana. CORREA stated that it was shorter for him to cross into the U.S. than drive to Tecate.

Det. Sanchez again pointed out to CORREA that he was telling SA Bauerle and Det. Sanchez a different story than he told the CBP officers and that his story was conflicting and confusing. CORREA stated again that he did not see anything taken out of his truck, and as a result, there was nothing in it. CORREA stated that CARLOS gave him the truck to test drive. CORREA stated that there had been no discussion of a down payment, total cost for the truck, or

AusA

restrictions on his "test drive." CORREA stated that CARLOS and "JUNIOR" trust him because CORREA has known CARLOS for thirty-five years.

CORREA stated that he has no ties to the U.S. CORREA does not reside with his children or know where his children reside. CORREA stated that the only person in the U.S. he has contact with is J. Rodriguez. CORREA stated that his contact with J. Rodriguez is rare and he does not know her well, or visit or talk with her often.

At approximately 4:30 p.m. ICE SA Mike Crim, SA Bauerle, and Det. Sanchez escorted CORREA out of the interview area and allowed CORREA to observe the 17 boxes containing the 32 packages of marijuana that had been removed from his vehicle. CORREA was then allowed to view the non-factory/false compartment in the camper shell/truck bed area of his vehicle. At approximately 4:50 p.m. CORREA was returned to the interview area and given an opportunity to correct the discrepancies in his story. CORREA restated his reasons for entering the U.S. and reiterated his lack of knowledge of the drugs again with no changes.

CORREA was previously arrested by the San Diego Police Department on November 22, 2003, for violating California Health and Safety Code 11550, Under the Influence of a Controlled Substance. CORREA was booked and released from San Diego Central Jail the same day.

On December 1, 2007 at approximately 7:00 p.m., SA Bauerle booked CORREA into the Metropolitan Correctional Center pending federal prosecution.

Executed on December 1, 2007 at 11:30 p.m.

Bryan Bauerle
SPECIAL AGENT

On the basis of the facts presented in this probable cause statement consisting of eight (8) pages, I find probable cause to believe that the defendant named in this probable cause statement committed the offense on December 1, 2007 in violation of Title 21, United States Code, § 952 & 960.

Honorable Ruben B. Brooks
United States Magistrate Judge

12/3/2007 at 9:30 a.m.

Date/Time